UNITED STATES, Appellant

v.

DAVID B. LAGRANGE, Hospitalman, U. S. Navy, and RAYMOND D. CLAY, Hospitalman, U. S. Naval Reserve, Appellees

1 USCMA 342, 3 CMR 76

CAPT. Carl G. Lutz, USMC, for Appellant.
LCDR. Robert H. McCarthy, USNR, for Appellees.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The two accused hospitalmen, on duty aboard the U.S.S. HAVEN, were tried by a special court-martial at Pusan, Korea, for a violation of that ship's regulations with respect to the use and application of barbiturates, such regulations being enacted pursuant to Article 92, Uniform Code of Military Justice, 50 USC § 686. Although both entered a plea of not guilty, the court found them guilty of the charges and specifications and sentenced both to be discharged from the service with a bad-conduct discharge, and to forfeit $60.00 per month for 6 months. The sentences were approved by the convening authorities.

The allied papers with the record of trial show that the commanding officer of the U.S.S. HAVEN, a Captain in rank, had signed the charge sheet, thereby becoming the accuser. He disqualified himself as convening authority, forwarded the papers to his superior, the Commander, Naval Forces, Far East, and recommended trial by general court-martial. This recommendation was rejected and the superior authority directed trial by special court-martial and by letter designated the Commander, Fleet Activities, Pusan, Korea, a Commander in rank, as the authority to exercise jurisdiction and appoint the court. By virtue of this designation, the Commander, Fleet Activities, acting as convening authority, issued the necessary orders appointing a special court. When the case was called for trial the accused moved to dismiss the charge on the ground that the court was not legally convened. The motion was overruled with the resultant finding and sentence. On appeal, the board of review in the office of The Judge Advocate General of the Navy reversed because it held the officer who appointed the court was not authorized so to do. The Judge Advocate General of the Navy then certified the case to this Court to review the holding of the Navy board of review.

The sole question presented by the certification is whether the board of review was correct in holding that an officer junior to the accuser and one not in the normal chain of command did not have authority to appoint the court-martial.

Article 23(b), Uniform Code of Military Justice, 50 USC § 587, after designating who may convene special courts-martial, provides as follows:

"When any such officer is an accuser, *the court shall be convened by superior competent authority,* and may in any case be convened by such authority when deemed advisable by him." [Italics supplied]

This provision is amplified by paragraph 5a(3), Manual for Courts-Martial, 1951 (made applicable to special courts-martial by paragraph 5b(2), which states, in part, as follows:

"It is unlawful for an accuser to convene a general court-martial for the trial of the person so accused. When any commander who would normally convene the general court-martial is the accuser in a case, he shall refer the charges to a superior competent authority who will convene the court *or designate another competent convening authority* to exercise jurisdiction." [Italics supplied.]

**343**

Article 36 of the Uniform Code of Military Justice, 50 USC § 611, provides that the President ■ may prescribe rules of procedure, including modes of proof in cases before courts-martial, provided they are not contrary to or inconsistent with the provisions of the Code. This Article brings into the Code the oft-expressed rule that the terms of a congressional enactment can not be defeated by terms engrafted thereon by an executive order, and if the two are inconsistent, the statute must stand alone. But, it imposes on this Court the duty to reconcile any conflicting provisions dealing with the same subject matter and to construe them, in so far as reasonably possible, so as to be in harmony with each other.

This rule was acknowledged by us in the case of United States v. Lucas (No. 7), 1 USCMA 19, 1 CMR 19, decided November 8, 1951. There, we stated:

"For the purposes of this case we can and do hold that the act of Congress (the Code) and the act of the Executive (the Manual) are on the same level and that the ordinary rules of statutory construction apply. In that event the general rule is that statutes dealing with the same subject should, if possible, be so construed that effect is given to every provision of each. Moreover, in dealing with each, its provisions should be construed so that no part will be inoperative, superfluous, void or ineffective."

By inspection it is readily ascertainable that the only real difference between the Article of the Code and the paragraph of the Manual is that the former limits the convening of the court to "superior" competent convening authority, and the Manual extends the authority to "another" competent convening authority. If we were to give the ordinary meaning to the words used in the Manual, we would be faced with a construction which would permit an authority to convene a court without regard to his relationship to the accuser. He could be either superior or junior, just so long as he was author-

ized by the Code to convene a court. This construction would clash head-on with the words "superior convening authority" used in the Code.

The word "superior" is defined in Webster's New International Dictionary as "ranking senior or higher in rank or office." The glossary in Part I, Uniform Code of Military Justice, 50 USC § 551, does not define "superior convening authority", but it does set forth the meaning of "superior officer." The Act provides that "superior officer" shall be construed to mean "superior in rank or command." For the purposes of this case, we need not differentiate between rank and command, for the reason that the officer who convened this court was junior in rank and was not in the chain of command. He, therefore, could not be a superior convening authority within the fair meaning of the words of the Code. To avoid hostility between the two provisions, it is necessary that the word "competent" as used by the Manual in the phrase "another competent convening authority" be defined within the framework of the Code so as to apply only to those authorities who are senior. This limitation is well within the definition of the word, as it is defined as one who is legally qualified, and, by the Code, qualification means one who is superior.

We are satisfied that even though we have somewhat limited the wording of the Manual to meet the specifiations of the Code, we have reached the correct conclusion on congressional intent. The picture of that intent is made crystal clear by the tests hereinafter applied. The Code is definite, and the confusion only appears on the scene when the provisions of the Manual are superimposed. However, there can be no question that one of the objectives of Congress was to lessen command control and to do so in this instance purposely used the word "superior." Regulations ■ and statutes are to be construed with reference to their manifest object, and if the language is susceptible of two constructions, one which will carry out and the other defeat that object, they should receive the former construction.

There was a particular necessity for permitting only a superior authority to convene the court. The history of military justice shows that an accused could not be assured a fair trial when his guilt or innocence and sentence were under the immediate control of one who accused him. The personal interest of the accuser has, for over 100 years, been considered to be of sufficient importance to disqualify him from participating in the proceedings in any way. It was, therefore, necessary to provide a procedure whereby the accused could be brought to trial in an atmosphere free from coercion by one who could, directly or indirectly, influence the court. This atmosphere requires that the officer who convenes the court and reviews the sentence shall himself be free from any influence from the accuser. To now construe the provision to permit an authority junior to the accuser, and in some instances one who could be under his command, to convene a court would ignore the lessons learned over the years and make further corrective action likely.

The mischief present under the old codes is known by all parties familiar with military law. In the recent case of United States v. Gordon (No. 258), 1 USCMA 255, 2 CMR 161, decided March 19, 1952, we had occasion to deal with one of the vices inherent in the former procedure, and the following quotation from that case is applicable here:

"Over the years a bitter controversy has existed over the fairness of a system which grants to a commander, as an attribute of command, the right to select members of a court to try personnel of his command. Without joining either side in that argument, we can say that we would overlook the realities of the situation and the history of military justice if we did not know that Congress intended when it enacted the Uniform Code of Military Justice to modernize the military judicial system and grant to an accused the right to be tried by as fair and impartial a court as is consistent with the maintenance of an efficient military organization;

and, that it further intended to narrow the commander's influence on the court by insulating members from any type of control by the commander's expressed direction, or by his moral suasion or persuasion."

Congress in unambiguous language made it an offense for a convening authority to influence in any way the court-martial in its deliberations, thus clearly indicating its views on one of the vices it intended to eliminate. If, as we stated in the Gordon case, supra, Congress intended to narrow the commander's influence on the court, by insulating the members from any type of control by his direction or by his moral suasion or persuasion, we would remove part of this insulation by a construction which would permit an officer junior in rank or command to the accuser to appoint the court and review the sentence. Such a construction would not cure the evil, it might have a tendency to revive it and bring about undesirable results. If command control should not be exercised by an accuser directly, then it should not be permitted by allowing him to act through a subordinate. Assuming a desire by an accuser to punish severely his offender, it would be an easy matter to act through a junior. It would be most difficult for the latter to ignore even the unannounced desires of his superior. Clearly, Congress did not intend a result which would return to the old and permit the court to be influenced by the whims and caprice of the accuser. We do not contend this situation to be present in the case at bar, we merely point out that if we fail to give force and effect to the word "superior" such a result is readily foreseeable in other instances.

We could test our construction by other well-known principles; but, when we use each as a touchstone, we are directed back to the core of the problem, that is, Congress intended to adopt a procedure which would lessen command control. Regardless of the test we use, we can arrive at no conclusion other than that Congress intended that if an officer authorized to convene a court is disqualified, a superior must assume the responsibility and convene the court.

That is what the Code states, and that is the only reasonable construction that can be placed on the two provisions.

Having concluded that an officer junior to the accuser should not convene a special court-martial to try the cause in which the senior is an interested party, we must hold that the court, as designated, was not authorized to try the two accused. In the case of Keyes v. United States, 109 US 336, 27 L ed 954, 3 S Ct 202, the United States Supreme Court laid down the following principle of law, (p. 340):

"Where there is no law authorizing the court-martial, or where the statutory conditions as to the constitution or jurisdiction of the court are not observed, there is no tribunal authorized by law to render the judgment."

The provisions with which we deal require a superior to convene the court; and these provisions having been violated, the tribunal designated was not authorized by law to try these accused and render a judgment against them.

The question certified by The Judge Advocate General of the Navy is answered in the affirmative, the court-martial was not authorized to try the accused, and the decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.