**UNITED STATES**

v.

**Airman Basic Jeffrey F. BLOSS, FR 180–44–0768 United States Air Force.**

**ACM S25096.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 19 Sept. 1980.

Decided 13 May 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain G. Michael Lennon.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before EARLY, KASTL and MILLER, Appellate Military Judges.

## DECISION

MILLER, Judge:

Tried by special court-martial, military judge alone, the accused was convicted pursuant to his pleas, of operating a vehicle while drunk, wrongfully appropriating a vehicle, stealing less than $50.00 in currency, and unlawful entry with intent to commit

larceny, in violation of Articles 111, 121, and 130, Uniform Code of Military Justice (U.C.M.J.), 10 U.S.C. §§ 911, 921, and 930. The approved sentence extends to a bad conduct discharge, confinement at hard labor for six (6) months, and forfeiture of $299.00 per month for six (6) months.

The accused was a member of the 1956th Communications Group, an Air Force Communications Command (AFCC) (tenant) organization located on Yokota Air Base, Japan, a Pacific Air Forces Command (PACAF) (host) base. Consequently, by operation of Air Force Regulation 11-4, Host-Tenant Support Responsibilities of USAF Organizations, 19 June 1974, he was attached to that base's host organizational unit, the 475th Air Base Wing (PACAF), and its appropriate subordinate and higher commands, for court-martial jurisdiction purposes.[1]

■ His tenant organizational commander preferred the charges against him, pursuant to Air Force custom, and after having signed and sworn to the charge sheets as accuser, complied with A.F.R. 11-4 by forwarding them to the commander of the host organizational unit, who by virtue of occupying that position was qualified under Article 23(a)(4), U.C.M.J., 10 U.S.C. § 823(a)(11), to convene a special court-martial to try the accused's case.[2] The Commander, 475th Air Base Wing (PACAF) exercised this authority, referring the charges to a court which he appointed. Subsequent to trial, it was discovered that the colonel commanding the 1956th Communications Group (AFCC), had an earlier date of rank than the colonel commanding the 475th Air Base Wing (PACAF), who convened the court. The sole error alleged on appeal is that, under these facts, the court was improperly convened in violation of Article 23(b), U.C.M.J.

Before proceeding further, we quote the language of Article 23, U.C.M.J., in its entirety:

Art. 23. Who may convene special courts-martial

(a) Special courts-martial may be convened by—

(1) any person who may convene a general court-martial;

(2) the commanding officer of a district, garrison, fort, camp, station, Air Force base, auxiliary airfield, or other place where members of the Army or the Air Force are on duty;

(3) the commanding officer of a brigade, detached battalion, or corresponding unit of the Army;

(4) the commanding officer of a wing, group, or separate squadron of the Air Force;

(5) the commanding officer of any naval or Coast Guard vessel, shipyard, base, or station; the commanding officer of any Marine brigade, regiment, detached battalion, or corresponding unit; the commanding officer of any Marine barracks, wing, group, separate squadron,

---

1. This regulation, in effect at the time this case underwent pretrial processing, provided in pertinent part at paragraph 8:

a. Authority for Jurisdictional Attachments: This regulation is the authority for the following jurisdictional attachments; no other order, writing or implementing agreement is required: ... (1) All members of a tenant unit are attached to the host command, and its appropriate subordinate and higher commands, for general, special, and summary court-martial jurisdiction ...

This precise language, originally incorporated into the Regulation in its 1968 edition and included in the 16 March 1981 edition, stemmed initially from language of the 1956 edition, which had provided at paragraph 5:

Both the concurrent use agreement and the orders of attachment will clearly indicate

whether the tenant will be attached for (1) general, special and summary courts-martial jurisdiction ...

2. As the Commander of the Host Organization he was a commanding officer of a group of detached units attached to him by A.F.R. 11-4 for special courts-martial jurisdictional purposes. Although it might also appear that he was authorized to convene this court as base commander under Article 23(a)(2), where Air Force Regulations specifically place jurisdiction over certain of its members in a particular commander pursuant to another subparagraph of Article 23(a), that jurisdictional grant of power to exercise convening authority is considered exclusive.

station, base, auxiliary airfield, or other place where members of the Marine Corps are on duty;

(6) the commanding officer of any separate or detached command or group of detached units of any of the armed forces placed under a single commander for this purpose, or

(7) the commanding officer or officer in charge of any other command when empowered by the Secretary concerned.

(b) If any such officer is an accuser, the court shall be convened by superior competent authority, and may in any case be convened by such authority if considered advisable by him.

The question we must resolve here, then, is whether the Commander, 1956th Communications Group (AFCC), who acted as accuser by preferring the instant charges, falls within the meaning of the phrase "any such officer" as used in Article 23(b), U.C. M.J. This precise issue has been addressed by this Court before. Our 1952 brethren held that even where an accuser is neither in the convening authority's chain of command, nor authorized by Article 23(a), U.C. M.J., to convene a court-martial, he is prohibited by Article 23(b), U.C.M.J., from assuming jurisdiction over the case if the convening authority is junior in rank to him. *United States v. Burnette*, 5 C.M.R. 522, 524 (A.F.B.R.1952), see also *United States v. Navarro*, 20 C.M.R. 778 (A.F.B.R. 1955) and *United States v. Avery*, 30 C.M.R. 885 (A.F.B.R.1960).[3]

In view of apparently contrary dicta expressed in *United States v. Haygood*, 12 U.S.C.M.A. 481, 31 C.M.R. 67 (1961) and the recent contrary holding of the Army Court, in *United States v. Calley*, 46 C.M.R. 1131, 1150 (A.C.M.R.1973), we are now appropri-

ately asked by the Government to reexamine our previous holdings on this issue.

We note that our earlier decisions were based on a construction of general Congressional intent derived from early dicta of the Court of Military Appeals construing the meaning of the phrase "superior competent authority", as used in Article 23(b), U.C. M.J., *United States v. LaGrange*, 1 U.S.C. M.A. 342, 3 C.M.R. 76 (1952).

In addressing the question of whom, a convening authority, once disqualified, forwards charges to for a proper referral, Judge Lattimer wrote:

> If . . . (in Article 23(b)), Congress intended to narrow the commander's influence on the court, by insulating the members from any type of control by his direction or by his moral suasion or persuasion, we would remove part of this insulation by a construction which would permit an officer junior in rank or command to the accuser to appoint the court and review the sentence . . . . We can arrive at no conclusion other than that Congress intended that if an officer authorized to convene a court is disqualified, a superior must assume the responsibility and convene the court.

*United States v. LaGrange, supra*, p. 79.

It was but a small step, in deciding *United States v. Burnette, supra*, 35 days after publication of *LaGrange*, for our brethren to apply what they considered to be the import of this dicta in construing the phrase, "any such officer" appearing in the same sentence of the same Article. Air Force precedent was thus established and followed with only minor equivocations in both *United States v. Navarro, supra*, and *United States v. Avery, supra*.[4]

---

**3.** A single Coast Guard decision agrees, *United States v. Chavers*, 23 C.M.R. 701 (C.G.B.R. 1957)

**4.** The equivocation consisted of: "In short, we understand Articles 22(b) and 23(b) to preclude a commander who is the accuser from forwarding the case to trial to (1) another commander below him in the chain of command or (2) one who, not in his chain of command at all, is junior to him in rank, but *not* to (3) one who is

superior to him in the chain of command. LaGrange makes clear the reason behind the second of these three—to avoid the possibility of pressure by an officer senior in rank to the convening authority who may thereafter be his commander. But the reason would not appear to require extension to the situation where, as here, the junior in rank is himself the commander for the time being. We are satisfied that the mere *possibility* of a subsequent command relationship of the accuser to the conven-

Less than ten months following the *Avery* decision, however, the Court of Military Appeals, again in dicta, commented on its holding in *LaGrange*:

Code, supra, Article 23, requires convening of a special court-martial by superior competent authority *when* the normal convening authority is the accuser ... [emphasis added]. In *United States v. LaGrange, supra*, we concluded the Article also required that a convening authority *not in the chain of command* over the accuser be his superior in rank. [emphasis in the original].

*United States v. Haygood, supra*, at 68.

Was the dicta in *LaGrange* and *Haygood* applicable only to factual situations where the "normal convening authority" was in fact, already disqualified by virtue of being the accuser? We believe that the court's failure to review the issue as addressed by the Army Court in *United States v. Calley, supra*, while granting the accused's petition in other matters therein, so indicates. *United States v. Calley*, 22 U.S.C.M.A. 534, 48 C.M.R. 19 (1973).

▌ Lacking an explicit holding by the Court of Military Appeals with respect to the issue before us, and in light of its dicta and acts of omission, subsequent to the dicta it had expressed in *LaGrange*, we conclude that our brethren on the 1952 Air Force Board of Review, based their opinion on an apparently mistaken belief that the issue had been settled in *LaGrange*. Consequently, upon a reexamination of the his-

torical legislation and purposes underlying Article 23, and in light of changes in Air Force implementation of this Article's provisions during the intervening 29 years, we now overrule the holdings of both the *Burnette* decision and those of *Navarro* and *Avery*. Instead, we hold that the phrase "any such officer" as used in Article 23(b), encompasses only that officer who actually exercises the authority granted to him by Article 23(a) in regard to a particular case, and superiors in that officer's direct chain of command.

Looking first to the literal wording of Article 23(b), itself, it seems beyond cavil, that the phrase "any such officers" refers to "officers" authorized by Article 23(a), U.C.M.J., to convene courts-martial.[5] What is initially unclear to us is whether the modifiers "any such" are meant to apply only to "officers" who actually convene special courts-martial in particular instances, or are meant to apply to all "officers" occupying any positions enumerated in the subparagraphs of that section.

A study of the 1949 Congressional Hearings concerning the original drafting of the U.C.M.J.,[6] reveals that, contrary to the statement of Congressional intent in *United States v. Burnette, supra*, Congressional debate regarding Articles 22 and 23 largely concentrated on a single issue, to wit: whether the authority to convene courts should be completely withdrawn from commanders within an accused's chain of command.[7] Upon determining that military ne-

ing authority is not sufficient to disqualify for ... it is always possible that promotion of the junior of two officers in the same rank will reverse their relative seniority." [Emphasis in original] *United States v. Avery, supra.*

5. See the excellent discussion of grammatical construction found in *United States v. Calley*, 46 C.M.R. 1131, 1150 (A.C.M.R.1973).

6. *Hearings Before a Subcommittee of the Committee On Armed Services, House of Representatives, Eighty-First Congress, First Session on HR 2498*, United States Government Printing Office, Washington, 1949.

7. The proposal reflected a concern that such a commander, being personally responsible for assuring discipline within his own unit might

exercise subtle command influence over court-members he would select from his own command so as to insure verdicts consistent with his own perception of the disciplinary needs of his command, rather than in accordance with the facts and instructions as presented to court members. *Subtle command influence was described* as consisting of indirect suggestions to court-members which would not be easily perceived in the record of trial, but upon which court-members under his command would act because of his direct influence over them by virtue of his control over their: (1) promotion; (2) efficiency; (3) leaves; (4) assignments; and (5) "that little miscellany of things where the beneficence of a commanding officer toward an officer is of paramount importance." Id., p. 626.

cessity dictated against such a preclusion, Articles 22 and 23 were enacted simply as a restatement of existing law;[8] law whose phraseology was first created in 1830.[9]

Tracking the legislative and judicial development of the 1830 statute up through the 1949 Congressional hearings on the U.C.M.J.,[10] we discover (1) continuing assumptions on the part of scholars and jurists that aid us in clarifying the grammatical construction of the Article, and (2) the original and apparently unchanging purpose behind enactment of all antecedent Articles to our present Articles 22 and 23, U.C.M.J.[11]

Looking first to the former, we find, somewhat surprisingly, that throughout history, designation of positions with the authority to convene courts-martial have always carried with them an implicit assumption that such authority is limited to the trial of airmen within the position occupant's own command.[12] A further assump-

tion has been that even with regard to the trial of these individuals, position occupants might be precluded from exercising this authority by intraservice regulation or agreement, that places the power to exercise convening authority over personnel of their command, exclusively in other parties so authorized by the Articles.[13]

Turning then, to an examination of the historic purpose of the Articles, we find that the initial 1830 legislation resulted from a trial[14] in which, the convening authority, who had been the victim of the alleged crime, not only convened the court and appointed its members from within his command, but also preferred charges, acted as a key prosecution witness, and eventually, acting as reviewing authority, approved the findings in the case.

The reasons the 1830 Congress attempted to statutorily prevent a recurrence of such a trial are no different than the concerns of

---

8. Id., p. 1137.

9. Act, May 29, 1830, 4 Stat.L., p. 417, sec. 1.

10. *See et seq.*: Act, May 29, 1830, 4 Stat.L., p. 417, sec. 1; Articles of War, 1806, Articles 65 and 66; Articles of War 1874, Articles 72, 81, and 82; Articles of War, 1884, Articles 72, 81, and 82; Act, October 1, 1890, An Act to Promote the Administration of Justice in the Army, secs. 1 and 2; Acts, March 2, 1913 and March 1, 1917 pertaining to the Articles of War; Articles of War, 1917, Articles 5, 6, 7, and 8; and Articles of War, 1920, Articles 8 and 9. Also see, *et seq.*: Army Regulations of 1895, Article LXXV, paragraph 932; General Orders War Department—1918, General Order # 56, Paragraph III; *Digest of Opinions of the Judge Advocate General of the Army*, Winthrop, Government Printing Office, Washington, 1895; *Digest of Opinions of the Judge Advocate General of the Army, Revised Edition*, Winthrop, Government Printing Office, Washington, 1901; *Digest of Opinions of the Judge Advocate General of the Army, 1912–1940*, Government Printing Office, Washington, 1940; *Digest of Opinions of the Judge Advocate General of the Army*, 1941 Supplement, and Bulletins Volumes I–X, Government Printing Office, Washington, D.C. 1942–1950; *Military Law and Precedents*, William Winthrop, Government Printing Office, Washington, 1896; and, *Military Law and Precedents, Second Edition*, Winthrop, Government Printing Office, Washington, 1920.

11. We consider the history of both Articles 22 and 23 since both stem from a predecessor of

Article 22, and the grammatical construction of the two Articles is nearly identical.

12. See both the first and second editions of *Military Law and Precedents, supra*, in which Winthrop states: "It is of course to be understood that the authority, conferred by the Article upon division, department and army commanders as such, extends only to the convening of courts for the trial of officers and men *of their own commands.*" [emphasis in original]

13. For an extreme example, *see Digest of Opinions of the Judge Advocate General of the Army, 1912–1930*, Government Printing Office, Washington, 1930, p. 626, in which an opinion indicates that regardless of language of Articles of War 8, in the 1917 Articles of War, indicating that a commanding general of a territorial department can convene a court with no apparent restrictions, he could not do so where he would invade the independent court-martial jurisdiction created by Department of War, General Order # 56, 1918, of the commanding officer of a camp, even within the general's Territorial Department. Apparently to avoid this result, Congress amended the Articles' language in all legislation subsequent to the Articles of War of 1920 to include the phrase "and may in any case be appointed by superior authority when by the latter deemed desireable."

14. *Military Law and Precedents, Second Edition, supra*, p. 62, footnote 33.

our appellate courts, today. The first of these is how a victim of an offense, or an individual, who in preferring the charges, swears to the truth of the allegations contained therein, can make a fair and unbiased judgment as to whether sufficient evidence is present in a case to warrant its referral to court-martial, and if so, then the type of court-martial it should be referred to. The second is the ease with which such a convening authority, who would probably select members of his own command as court members, could undetectably effect the decision of such court members through the exercise of subtle command influence over them. And the third is how such a person could impartially function as reviewing authority in such a case.

Assuming the decision of the Eighty-First Congress to restate existing law in Articles 22 and 23, U.S.M.J., constituted an endorsement of these historical principles, the apparent ambiguity in the language of the Articles dissipates.

Clearly, authority granted to the occupants of positions enumerated in the subparagraphs of Articles 22(a) and 23(a) was patently "limited"; it was severely restricted so as to give position occupants jurisdiction only over certain members of their own command.

The simple selection of the disjunctive "or" to connect the subparagraphs of Article 23(a) assumes particular significance when the language is subjected to this analysis. The article states that a particular Air Force member might be subject to the convening authority of *either* his general court-martial authority, Article 23(a)(1), *or* the commanding officer of the geographic locality where he is located, Article 23(a)(2), *or* the commanding officer of his unit of assignment, (Group or higher), Article 23(a)(4), *or* a commanding officer to which his unit is specifically assigned for courts-martial purposes, Article 23(a)(6), *or* the commanding officer empowered by the Secretary of the Air Force to exercise authority over him. He is not, however, with respect to any particular case, subject to multiple decisions of commanders from more than one of the applicable paragraphs. The decision as to choice of convening authorities from among the applicable subparagraphs, either on a case by case basis, or regulatory as to every instance, is left to the discretion of the Air Force.

Viewed in this context, the modifiers "any such" were necessarily meant to apply only to those "officers" who actually possess the authority to convene courts-martial in regard to a specific case, to wit: the designated convening authority to which charges are forwarded in a particular case, or a superior in that particular convening authority's chain of command. For only these persons (1) could be required to exercise unbiased judgment as to whether or not there was sufficient evidence of an offense to justify subjecting a particular accused to trial (2), would have the opportunity to exercise "subtle command influence" over court-members appointed from within that particular convening authority's own command; and (3), could be required to make fair and unbiased reviews of the courts-martial proceedings.

The more inclusive interpretation of the meaning of the modifiers, would serve no legitimate legislative intent, creating in certain cases needless elevation of routine disciplinary matters to the highest levels of command.

Although not specifically set out in regulation, in the Air Force today, each individual Air Force member looks to but one individual "commander" for special courts-martial jurisdictional purposes when he commits a particular offense. That individual is the commander of the organization to which the accused is assigned, unless the accused is specifically attached for courts-martial jurisdictional purposes, pursuant to regulation or agreement, to another commander who also occupies a position enumerated under a subparagraph of Article 23(a) other than subparagraph 4. While a superior in the chain of command of a particular accused's commander for courts-martial purposes, may also convene a court-martial on the accused, (pursuant to Article 23(b)), no commander outside that conven-

ing authority's chain of command may do so. Thus the possibility that an accused's commander may "shop around" and forward the case to a convening authority whom he feels he can exercise influence over is negated. Each convening authority and each commander being fully aware of the provisions of Article 37, U.C.M.J., 18 U.S.C. § 837, it is inconceivable that any commander outside the convening authority's direct chain of command would even attempt to place enough pressure on one of our convening authorities to cause him to face the possible consequences of violating this Article's provisions.

■ Applying our interpretation of the law to the facts before us, we find that the Commander of the 1956th Communications Group (AFCC), was neither the designated convening authority to whom charges were forwarded in this case by Air Force Regulation, nor was he in that convening authority's chain of command. Consequently, he did not fall within the category of "any such officer" as the phrase is used in Article 23(b), U.C.M.J. It cannot be said that the court in this case was improperly convened. Accordingly, the findings and sentence are

AFFIRMED.

EARLY, Chief Judge, and KASTL, Judge, concur.