UNITED STATES, Appellant,

v.

Paul S. RIDLEY, Technical Sergeant,
U.S. Air Force, Appellee.

No. 50639.
ACM S26246.

U.S. Court of Military Appeals.

April 14, 1986.

For Appellee: *Colonel Leo L. Sergi* (argued); *Daniel M. Schember,* Esquire (on brief).

For Appellant: *Captain Marc Van Nuys* (argued); *Colonel Kenneth R. Rengert* and *Major Robert E. Ferencik, Jr.* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

The accused, who was assigned to the Air Force Office of Scientific Research

(AFOSR), was charged by his commander, Colonel James E. Baker, with possessing and using marihuana and soliciting another to distribute it, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The charges were referred for trial by a special court-martial convened by Colonel Edward R. Maney, commander of the 1100th Air Base Wing, Bolling Air Force Base, where AFOSR was a tenant unit. Colonel Baker, who preferred the charges himself and so was the "accuser," see Article 1(9), UCMJ, 10 U.S.C. § 801(9), was senior in rank to Colonel Maney, the convening authority; but at trial no objection was made on this ground.

Pursuant to Ridley's pleas, the military judge found him guilty of the charge and its various specifications and sentenced him to a bad-conduct discharge, confinement for 4 months, and reduction to the grade of sergeant (E–4). The trial results were approved by the convening authority and the supervisory authority; but on August 1, 1984, the Court of Military Review, by divided vote, set aside the findings and sentence because the accuser had outranked the convening authority. After a motion for reconsideration was denied by the court, the Judge Advocate General of the Air Force filed with this Court a certificate for review on this issue:

WAS THE AIR FORCE COURT OF MILITARY REVIEW CORRECT IN CONCLUDING THAT APPELLANT'S SPECIAL COURT–MARTIAL LACKED JURISDICTION BECAUSE THE CONVENING AUTHORITY WAS JUNIOR IN RANK TO THE ACCUSER WHERE THE ACCUSER, WHO HAD NO AUTHORITY TO CONVENE COURTS–MARTIAL, COMMANDED A SUBORDINATE UNIT ATTACHED TO THE CONVENING AUTHORITY FOR PURPOSES OF COURT–MARTIAL JURISDICTION BY AIR FORCE DIRECTIVE?

I

Article 23(a), UCMJ, 10 U.S.C. § 823(a), designates seven classes of persons who may convene special courts-martial.[1] The first class consists of "any person who may convene a general court-martial"—as described by Article 22(a), UCMJ, 10 U.S.C. § 822(a). The next five classes are composed of the commanding officers of various organizations; and the seventh class consists of "the commanding officer or officer in charge of any other command when empowered by the Secretary concerned."

In oral argument before this Court, counsel agreed that Colonel Baker was among those persons authorized by Article 23(a) to convene special courts-martial, although it was not explained to us under which subsection of Article 23(a) he received this authority. However, apparently Baker never convened courts-martial because AFOSR, as a tenant unit, was subject to Air Force Regulation 11–4, whereunder "[a]ll members of a tenant unit or element are attached to the host command, and its appropriate subordinate and higher commands, for general, special, and summary courts-martial jurisdiction and for actions

---

**1.** (a) Special courts-martial may be convened by—

(1) any person who may convene a general court-martial;

(2) the commanding officer of a district, garrison, fort, camp, station, Air Force base, auxiliary air field, or other place where members of the Army or the Air Force are on duty;

(3) the commanding officer of a brigade, regiment, detached battalion, or corresponding unit of the Army;

(4) the commanding officer of a wing, group, or separate squadron of the Air Force;

(5) the commanding officer of any naval or Coast Guard vessel, shipyard, base, or station;

the commanding officer of any Marine brigade, regiment, detached battalion, or corresponding unit; the commanding officer of any Marine barracks, wing, group, separate squadron, station, base, auxiliary air field, or other place where members of the Marine Corps are on duty;

(6) the commanding officer of any separate or detached command or group of detached units of any of the armed forces placed under a single commander for this purpose; or

(7) the commanding officer or officer in charge of any other command when empowered by the Secretary concerned.

under Article 15, Uniform Code of Military Justice," 10 U.S.C. § 815.[2]

Article 23(b) contains this disqualification of persons who otherwise might convene a court-martial:[3]

If any such officer is an accuser, the court shall be convened by superior competent authority, and may in any case be convened by such authority if considered advisable by him.

This provision complements the prohibition against command influence in Article 37 of the Code, 10 U.S.C. § 837, for it seeks to avoid the creation of relationships which might be especially conducive to the actual or seeming exercise of command influence. Consistent with the objectives of Congress in drafting the Code, this Court from its earliest days has given Article 23 a broad interpretation. *United States v. La-Grange,* 1 U.S.C.M.A. 342, 3 C.M.R. 76 (1952).

However, contrary to the view of the court below, appellate government counsel contend that, under a careful reading of the statutory language, Colonel Maney, the commanding officer of the host unit, was not disqualified to convene the court-martial which tried the accused, even though he was outranked by Colonel Baker. According to the Government, the term "any such officer," as used in Article 23(b), refers to persons within the seven classes designated in Article 23(a); and Colonel Baker is not such a person because AFR 11–4, by attaching AFOSR to the host unit for court-martial jurisdiction and nonjudicial punishment action, has placed him outside the scope of Article 23(a).

■ This argument is unpersuasive. In the first place, it is unclear that AFR 11–4 divested Colonel Baker of authority to convene a special court-martial. Paragraph 8*a*(3) specifies that "[c]ommanders of tenant units retain their authority and jurisdic-

tion" under Article 15. Thus, attachment to the host unit for military justice purposes does not automatically divest the tenant unit of all its power to administer military justice; and the commander of the host unit and the commander of the tenant unit have concurrent jurisdiction as to nonjudicial punishment.

The regulation contains no express prohibition on the exercise of court-martial jurisdiction by a tenant unit's commander. Moreover, it authorizes "Exceptions to Jurisdictional Arrangements," which "must be consummated in writing at the general court-martial jurisdiction level or higher." Para. 8*b.* For example, it apparently is not uncommon for the commander of a tenant unit to agree with the commander of the host unit that the former shall continue to exercise jurisdiction over officers but shall relinquish it as to enlisted persons. It seems clear, therefore, that under AFR 11–4, divesting the court-martial jurisdiction of a tenant unit is not an indispensable attribute of a host-tenant relationship.

Even if we accept the premise that, by negative implication, AFR 11–4 was intended to divest Colonel Baker of his power to convene a special court-martial, it is unclear that this purpose could lawfully be accomplished. If Baker's authority had been conferred on him by the Secretary of the Air Force under subsection (7) of Article 23(a), then the Secretary, acting through Air Force Regulation or otherwise, could withdraw this authority. On the other hand, if Colonel Baker was among those persons described by subsections (1)–(6)— persons to whom Congress had granted authority to convene special courts-martial—it is arguable that an Air Force Regulation could not deprive him of this authority. In short, we are unconvinced that, as the Government suggests, Colonel Baker lacked the power to convene a special court-martial or that, if he had done so, a

---

2. *See* para. 8*a*(1), Air Force Regulation 11–4, "Host-Tenant Support Responsibilities of US Air Force Organizations," issued March 16, 1981.

3. Article 22(b), Uniform Code of Military Justice, 10 U.S.C. § 822(b), contains almost identi-

cal language for the convening authorities of general courts-martial, the only difference being that Article 22(b) substitutes "desirable" for "advisable."

jurisdictional defect would have existed in the proceedings.

Even if we assumed that the Secretary of the Air Force properly divested Colonel Baker of his authority to convene a special court-martial, this would not take him outside the scope of the words "any such officer" in Article 23(b). To give this language such a narrow, technical interpretation would violate congressional intent. *Cf. United States v. Crossley,* 10 M.J. 376, 379 (C.M.A.1981) (Everett, C.J., concurring).

The Government also argues that Colonel Maney was really "the superior competent authority" of Colonel Baker for purposes of Article 23(b). The premise for this argument is that, because AFOSR was attached to the host unit for court-martial jurisdiction, Maney, as commander of the host unit, was "superior" to Colonel Baker for military-justice purposes, even though he was not "superior" for any other purpose.

The premise itself is questionable because, as already noted, Colonel Baker and Colonel Maney both had authority to impose nonjudicial punishment on members of AFOSR, *see* para. 8*a* (3), AFR 11–4, and may have possessed concurrent court-martial jurisdiction. However, even if Maney handled all military-justice matters that arose in AFOSR, he still would not be a "superior competent authority" in relation to Colonel Baker. According to Article 1(5) of the Uniform Code, a " '[s]uperior commissioned officer' means a commissioned officer superior in rank or command." " 'Rank' means the order of precedence among members of the armed forces." 10 U.S.C. § 101(19). No one has disputed that Baker outranked Maney. So far as we can determine, neither was "superior" to the other in command. AFOSR, which Colonel Baker headed, was not supervised or controlled by Colonel Maney. No official action had been taken by anyone to place Maney in command of AFOSR. No organizational chart has been presented on which AFOSR was subordinate to the 1100th Air Base Wing in a chain of command. The two organizations had very different missions; and they did not even belong to the same Air Force major command—AFOSR belonging to the Air Force Systems Command (AFSC) and the 1100th Air Base Wing being part of the Military Airlift Command (MAC). Under these circumstances mere attachment of a tenant unit to a host unit for purposes of court-martial jurisdiction does not create a command relationship between the two or make the commander of the host unit a "superior competent authority" for purposes of Article 23(b).

If we accepted the Government's position, the consequences would be dismaying. For one thing, no "bright line" would be available in determining when Article 23(b) applied in host-tenant situations. Instead, it would be necessary to examine in detail the various service directives and the "Exceptions to Jurisdictional Arrangements." Secondly, the exclusion from Article 23(b)'s coverage, if recognized in the host-tenant situation, could be extended into many other areas. For example, under Article 23(a)(7), the Secretary of the Air Force could empower a junior commander—such as a squadron commander—to convene special courts-martial to try cases in commands headed by officers of much higher rank; and then the junior commander could refer cases to special courts-martial for trial, even though the charges had been preferred by the senior commanders. Thus, a captain could refer charges for trial, even though a four-star general was the "accuser."

■ Our basic problem with the Government's contentions is that they rely on technical, restrictive interpretations of Article 23(b). On the other hand, this Court's precedents have established that the disqualification in Articles 22(b) and 23(b) should be applied broadly. Thus, in *United States v. LaGrange, supra* at 345, 3 C.M.R. at 79, we said that

> the officer who convenes the court and reviews the sentence shall himself be free from any influence from the accuser. To now construe the provision to

permit an authority junior to the accuser, and in some instances one who could be under his command, to convene a court would ignore the lessons learned over the years.

Cf. *United States v. Pease*, 3 U.S.C.M.A. 291, 12 C.M.R. 47 (1953); *United States v. Avery*, 30 C.M.R. 885 (A.F.B.R. 1960); *United States v. Navarro*, 20 C.M.R. 778 (A.F.B.R. 1955); *United States v. Burnette*, 5 C.M.R. 522 (A.F.B.R. 1952). The conspicuous exception to liberal judicial interpretation of the disqualification provided by Articles 22(b) and 23(b) is *United States v. Bloss*, 11 M.J. 641 (A.F.C.M.R.1981)—a precedent which in the accused's case was repudiated by the majority in the Court of Military Review. 18 M.J. at 808.

Instead of seeking to restrict in some way the disqualification where an accuser is senior in rank to the convening authority, the Manual for Courts-Martial, United States, 1984, takes a very broad view of the circumstances under which a convening authority is disqualified. R.C.M. 504(c)(2) provides:

> A convening authority junior in rank to an accuser may not convene a general or special court-martial for the trial of the accused unless that convening authority is superior in command to the accuser. A convening authority junior in command to an accuser may not convene a general or special court-martial for the trial of the accused.

Even though this rule had not become applicable at the time of Ridley's trial, its promulgation by the President fortifies our belief that the disqualification involved here should be interpreted in a broad manner, in order to avoid any suspicion that, in referring the charges and appointing the court-martial members, the convening authority was merely doing the bidding of a senior officer who had preferred charges.

▮ Appellate government counsel have expressed concern that for this Court to hold that Colonel Maney was disqualified would create a dangerous precedent. We do not share this concern. If the problem were as significant as appellate govern-

ment counsel suggest, far more cases concerning this issue would have reached the Court in the past. Moreover, the President would hardly have used the broad language employed in R.C.M. 504(c)(2), if, by doing so, he would be creating the dangers feared by appellate government counsel.

Most important, an obvious solution is available for any difficulty in situations like this. Typically, a commanding officer has only an official interest in the trial of a case and is not directly or personally affected by the alleged misconduct. While a commander may prefer charges against a member of his unit, there is no requirement in the Code that he do so; and instead charges may be preferred by any officer or enlisted member. *See* Art. 30(a), UCMJ, 10 U.S.C. § 830(a). Thus, in the Navy, a commanding officer of a vessel usually does not prefer charges because otherwise he would be the "accuser" and would be disqualified to convene a special court-martial.

Even if a member of his unit swears to the charges, the commander does not thereby become an "accuser." *United States v. Pease, supra.* Accordingly, if some officer or enlisted person in AFOSR had preferred charges against Ridley, Colonel Maney would not have been disqualified as convening authority because Colonel Baker would not have been the "accuser." Similarly, in any other situation where a unit commander has only an official interest in a case and he may outrank the convening authority, the charges can be investigated and preferred by someone else—either in the commander's unit or some other unit. In this way, the disqualification under Article 23(b) can be readily avoided.

## II

▮ The convening of a special court-martial by someone who does not fall within the classes of persons described in Article 23(a) would be jurisdictional error. If, however, the person is within Article 23(a) but is subject to the disqualification stated in Article 23(b), different treatment is required.

■ This disqualification is intended to assure the impartiality and independence of the convening authority. In a somewhat similar manner, Article 25(c), UCMJ, 10 U.S.C. § 825(c), attempts to assure that enlisted members of a court-martial are impartial and independent. In *United States v. Wilson,* 21 M.J. 193 (C.M.A. 1986), we ruled that the appointment of an enlisted member who was ineligible to serve because he belonged to the accused's "unit" was not a jurisdictional error. *Cf. United States v. Blaylock,* 15 M.J. 190 (C.M.A. 1983); *United States v. Ferguson,* 5 U.S.C.M.A. 68, 17 C.M.R. 68 (1954). Likewise, we believe the convening of the special court by Colonel Maney was not jurisdictional error.

In *Wilson,* the defense had not objected to the participation of the ineligible enlisted member, even though the facts giving rise to his ineligibility should have been apparent to defense counsel. Because it was clear to us that, under the particular circumstances, the impartiality of the ineligible enlisted member had not been affected by his service in accused's "unit," we affirmed.

■ Information as to the dates of rank of Colonels Baker and Maney was readily available to the accused's defense counsel at trial. However, no defense objection was lodged to Colonel Maney's being the convening authority. The record contains no intimation that Colonel Baker attempted to influence the convening authority in any way adverse to the accused. In fact, when Colonel Baker transmitted the charges, he wrote a favorable description of Ridley's service and strongly recommended his retention in the Air Force. Subsequently,

after the accused had elected trial by military judge alone and pleaded guilty, Colonel Baker, his Vice Commander, and another AFOSR officer were defense witnesses in extenuation and mitigation.[4] Under these circumstances, we believe that here, just as in *Wilson,* no prejudice to the accused resulted from an oversight—which was not detected until late in the process of appellate review.[5] Therefore, reversal of the findings and sentence is not required despite the convening authority's disqualification under Article 23(b).

### III

With respect to the certified question, we conclude that the Court of Military Review properly decided that Colonel Maney was disqualified by Article 23(b). However, this disqualification was not jurisdictional; and under the circumstances of this case it was unnecessary to set aside the findings and sentence because the accuser was senior to the convening authority.

In the Court of Military Review, the accused assigned other errors which were not considered because the Court ruled that the court-martial had been improperly convened. 18 M.J. at 806. Accordingly, the Court of Military Review should have the opportunity to address those issues first.

The decision of the United States Air Force Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that court for further review under Article 66, UCMJ, 10 U.S.C. § 866.

Judge COX concurs.

---

4. In the pretrial clemency interview, these three witnesses did not recommend clemency or transfer to the 3320th Retraining Group, Lowry Air Force Base. Probably they were under the misapprehension that, as their recommendations for retention had been rejected by the military judge in adjudging the sentence, the issue of rehabilitation should not be reopened.

5. Two months after an initial assignment of error had been filed wherein the appropriateness of sentence was contested, appellate defense counsel were allowed to file a supplemental assignment of error.