**UNITED STATES, Appellee,**

v.

**Private First Class Scott R. DEACHIN, 379–84–7443, United States Army, Appellant.**

**CM 447091.**

U.S. Army Court of Military Review.

13 May 1986.

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Captain Richard J. Anderson, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Darrell R. Taylor, JAGC (on brief).

Before WOLD, FELDER and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

WOLD, Senior Judge:

Appellant was convicted of carnal knowledge and an indecent act with the twelve-year-old daughter of Brigadier General X, a deputy post commander. Major General Z, the post commander, detailed the members of the court-martial, referred the charges to trial, and approved the findings and sentence. The sentence, as adjudged and approved, included a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to Private E-1.

Appellant contends that the convening authority was disqualified because of "personal interest" in the case which made him an accuser under the provisions of Article 22(b), Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 822(b). Appellant extrapolates the claimed "personal interest" from the fact that the father of the victim was the convening authority's deputy and a "fellow general officer." At trial, however, the judge inquired whether there was any defense challenge of the convening authority and was assured that there was none.

The United States Court of Military Appeals has decided three cases in this area, *United States v. Crossley*, 10 M.J. 376 (C.M.A.1981), *United States v. Conn*, 6 M.J. 351 (C.M.A.1979), and *United States v. Gordon*, 2 C.M.R. 161 (C.M.A.1952). The opinion in *Gordon* does not reflect whether the issue was raised at the trial level and the opinion in *Crossley* leaves one in doubt as to whether the issue was raised

at trial. However, none of the three cases was decided on the basis of waiver. From this it could be argued that *Gordon,* and perhaps *Crossley,* stand for the proposition that a mere failure to request relief at trial does not constitute a waiver of the issue. *Cf. United States v. Wilson,* 23 C.M.R. 120 (C.M.A.1957) (Article 26(a) disqualification of law officer who had become witness not subject to passive waiver); *but cf. United States v. Gilfilen,* 6 M.J. 699, 702 (N.C.M. R.1978) ("[U]nder the circumstances of this case, [failure to raise the issue at trial] is considered a factor supporting the propriety of the convening of this court-martial."). We need not decide that issue here, however, because the case at bar presents more than a passive waiver. The trial defense counsel's express refusal to challenge the convening authority closely followed a discussion of the identity of Brigadier General X and his position at the installation. We recognize that this discussion took place while the parties were addressing a possible challenge of the trial judge. Nevertheless, our reading of the record of trial convinces us that the trial defense counsel intended to affirmatively waive the issue now before us, along with all other issues touching on the qualifications of the convening authority.

■ We can discern from the cases no intent on the part of the United States Court of Military Appeals to create an exception in this area to the general rule which gives effect to affirmative waivers. Disqualification of a convening authority as an accuser is not a jurisdictional error, *United States v. Gordon, supra,* 2 C.M.R. at 168, *construed in United States v. Ferguson,* 17 C.M.R. 68, 79 (C.M.A.1954), and nonjurisdictional errors are normally waived when not asserted at trial, *United States v. Wilson,* 21 M.J. 193, 197 (C.M.A. 1986); *United States v. Joseph,* 11 M.J. 333 (C.M.A.1981).[1] In addition, the policy reasons which favor giving effect to affirmative waivers apply with full force to this case:

■ First, a party's decision not to litigate an issue at trial often results in an avoidable absence of information in the record, and such an absence of information substantially hinders appellate review of the issue. In the case at bar, the parties have been forced to speculate concerning what effect, if any, the offenses against Brigadier General X's daughter may have had on Major General Z's ability to properly discharge his duties as convening authority. This court would similarly be forced to speculate as to whether Major General Z had a "personal interest" in the case.[2] Legal issues should not be decided without the benefit of factual development on the record by the trial court, which is best situated to gather, weigh, and resolve disputed evidence. *See United States v.*

---

1. In this regard, we view as inapposite those cases which hold unlawful command influence to be nonjurisdictional, yet nonwaivable. *See United States v. Blaylock,* 15 M.J. 190 (C.M.A. 1983), and cases cited therein. In *Blaylock,* the Court of Military Appeals observed that invocation of waiver in cases involving the exercise of unlawful command influence was "especially dangerous, since a commander willing to violate statutory prohibitions against command influence might not hesitate to use his powers to dissuade trial defense counsel from even raising the issue." *Id.* However, coercion of a defense counsel to prevent him from raising the issue is simply not a plausible consequence of a convening authority's "personal interest" in a case, given the kinds of situations covered by that term of art.

Moreover, the existence of a "personal interest" is determined by an objective test, *i.e.,* "whether, upon the particular facts and circum-

stances ... a reasonable person would impute to [the convening authority] a personal feeling or interest in the outcome of the litigation." *United States v. Gordon,* 2 C.M.R. at 166. In contrast, the quoted passage from *Blaylock* obviously contemplated situations in which a commander had engaged in *intentional* misconduct.

Finally, the exercise of unlawful command influence is a very serious form of malfeasance, particularly when intentionally done, whereas merely acting as the convening authority in a case in which one has a "personal interest" is not.

For all these reasons, we find the two situations so dissimilar that no useful analogy can be drawn here.

2. In fact, this court would be forced to speculate even as to the exact nature of the "personal interest" Major General Z might have had, assuming he had any at all. *See* note 3, *infra.*

*Sykes,* 373 F.2d 607, 612 (5th Cir.1966), *cert. denied,* 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967). This is one of the fundamental reasons that the waiver doctrine came into existence in the first place. 1 Wigmore, *Evidence* § 18 (Tillers rev. 1983).

Second, the refusal by trial defense counsel to challenge Major General Z may have been based on tactical considerations. Appellant was originally charged with rape, carnal knowledge and an indecent act. In return for appellant's offer to plead guilty to the carnal knowledge and indecent act specifications, Major General Z agreed to suspend for one year any confinement at hard labor in excess of thirty months and not to go forward on the rape specification. Thus, appellant's pretrial agreement with Major General Z effectively reduced the maximum possible term of confinement from life to thirty months. Had appellant successfully challenged Major General Z, however, he would have incurred at least some risk that the successor convening authority might decide to repudiate that pretrial agreement. *See generally Shepardson v. Roberts,* 14 M.J. 354 (C.M.A.1983); *United States v. Kazena,* 11 M.J. 28 (C.M.A.1981).[3]

Third, and finally, the interests of judicial economy favor the application of waiver. One reason for requiring timely objection at trial is that it gives the trial court the opportunity to identify problems in a case and to remedy them before the court dissipates its limited time and resources in proceeding with a case it might not otherwise hear. In other words, an absence of objection at trial denies the trial court the opportunity to correct errors at an early stage, leaving it to higher courts to consider the need for relief long after the case has been tried and initial review completed. *United States v. Del Llano,* 354 F.2d 844

(2d Cir.1965) (en banc); *United States v. Indiviglio,* 352 F.2d 276, 280 (2d Cir.1965) (en banc), *cert. denied,* 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

▌ Appellant might argue plain error. However, that doctrine is best reserved for those cases where an error has caused a miscarriage of justice or otherwise casts the justice system into disrepute, *United States v. Fisher,* 21 M.J. 327, 328 (C.M.A. 1986); *United States v. McGary,* 12 M.J. 760, 762 (A.C.M.R.1981), *pet. denied,* 12 M.J. 120 (C.M.A.1982); *United States v. Beaudion,* 11 M.J. 838, 840 (A.C.M.R.), *pet. denied,* 12 M.J. 181 (C.M.A.1981), and we find that this is not such a case.

The remaining question revolves around the relevance of the presence or absence of specific prejudice. In *United States v. Wilson,* 16 M.J. 678 (A.C.M.R.1983), a panel of this court stated that "[a]n accused will not be held to have waived a personal disqualification *where specific prejudice is shown,* or where the application of waiver would result in a miscarriage of justice." *Id.* at 681 (emphasis added). The italicized material is somewhat puzzling because it appears to treat the harmless error rule and the waiver rule as interlocking concepts. In our view, these two rules are instead mutually exclusive. If an error is waived, further consideration of its effect is simply estopped unless it qualifies as "plain error," *United States v. Tyler,* 17 M.J. 381, 385–86 (C.M.A.1984), and "plain error" is not the reciprocal of harmless error, as the italicized material seems to imply. *United States v. Fisher, supra; United States v. Dyke,* 16 M.J. 426 (C.M.A. 1983). Thus the presence or absence of specific prejudice, not amounting to "plain error," appears to us to be irrelevant where a waiver has taken place.[4]

**3.** In this regard, we also note the possibility that any personal interest in this case on the part of the convening authority may have redounded to appellant's benefit. If the convening authority's relationship with the victim's family had resulted in personal solicitude for her welfare, the convening authority might have been motivated to accept a relatively lenient pretrial agreement

in order to shield the victim from the potentially traumatic effects of a contested trial.

**4.** The panel decision in *Wilson* cited *United States v. Ivey,* 37 C.M.R. 626 (A.C.M.R.1967), as its authority. *Ivey,* however, merely held that under the particular circumstances of that case, the court was "unwilling to impose a waiver

The situation is further complicated by the fact that the Court of Military Appeals, in its opinion in the later *Wilson* case (*United States v. Wilson*, 21 M.J. 193 (C.M.A.1986)), quoted the above passage from the Court of Military Review opinion and tested for specific prejudice. Then, in *United States v. Ridley*, 22 M.J. 43 (C.M.A. 1986), the Court of Military Appeals cited its 1986 *Wilson* opinion and followed a similar course when dealing with a convening authority who was disqualified because he was junior to the accuser.

Notwithstanding our misgivings about the passage in question, we certainly have no authority to choose which part of the law laid down by our superior court we will apply. If a given holding of the Court of Military Appeals governs a case, we are of course bound to decide that case accordingly. Where a case is distinguishable, we must take care to apply the principles adopted by our superior court to the best of our ability, even though the result may differ. In short, when we deal with the precedents of our superior court, our task is to "faithfully execute" the law, just as we must where other sources of law are involved. It may be that the Court of Military Appeals will come to share our misgivings about the passage quoted in its *Wilson* opinion or it may be that we have mistakenly read into that passage, and into the Court's opinions in *Wilson* and *Ridley*, implications which keener minds would not find. However that may be, we are bound by the holdings in those cases and must apply them as we understand them unless the cases are properly distinguishable. We hold that they are properly distinguishable from the case at bar, for the following reasons.

In both *Wilson* and *Ridley* the Court of Military Appeals had before it fully developed evidence and indisputable facts re-

garding the issue of disqualification; there was no doubt that the court member in *Wilson* and the convening authority in *Ridley* were truly disqualified. Furthermore, the records in those cases contained evidence which was clearly sufficient to allow the Court to determine whether those disqualifications had had a prejudicial effect. Our reading of *Wilson* and *Ridley* is that, once confronted with these clear instances of disqualification, the Court examined the obviously ample record for specific prejudice, and, finding none, ruled accordingly. In other words, despite the Court's reference to waiver, its resolution of *Wilson* and *Ridley* does not appear to us to have turned on waiver, but rather on the application of the harmless error rule.

 The evidentiary situation in the case at bar is radically different. For the reasons stated above, we cannot determine whether our appellant suffered any specific prejudice as a result of the relationship between the convening authority and the victim's father or even whether the convening authority had a "personal interest" and was therefore disqualified. This makes application of the specific prejudice test futile and is what distinguishes this case from *Wilson* and *Ridley*. Unlike the Court in *Wilson* and *Ridley*, we have no rational choice but to apply waiver, for the only alternatives are to engage in sheer speculation about the possibility of error and specific prejudice or to present appellant with a windfall as a reward for his actions which precluded inquiry into the issue at the trial level. Thus, we believe it proper to apply waiver without reference to the presence or absence of specific prejudice, conditional only on the absence of plain error. Finding nothing in this case which casts the system into disrepute or reflects a manifest mis-

upon a mere showing of a failure to object," citing another, earlier, *United States v. Wilson*, reported at 23 C.M.R. 120 (C.M.A.1957). There, with respect to the disqualification of a law officer who had become a witness, the court held only that an affirmative waiver, as opposed to a passive waiver, was required. We can find

no authority in either *Ivey* or the earlier *Wilson* case for the proposition that the imposition of waiver should depend on the presence or absence of specific prejudice. To us, the holdings in the two cases deal only with the issue of affirmative versus passive waiver.

carriage of justice, we hold that appellant is entitled to no relief.[5]

Appellant has also attacked his sentence as inappropriately severe. We disagree.

The findings of guilty and the sentence are affirmed.

Judge FELDER concurs.

NAUGHTON, Judge, concurring:

Although I agree with Senior Judge Wold that, under the circumstances of this case, appellant has affirmatively waived the disqualification issue, in my view appellant has also failed to raise that issue before us.

Appellant contends that the convening authority should have been disqualified from referring or taking any action in this case since the victim of appellant's offenses was the daughter of his deputy. The basis of this contention is appellant's assertion that the convening authority was "personally interested" in the outcome of this case because it reflected on the reputation of a fellow general officer and close associate.

The test to be applied to determine personal interest is whether, under the particular facts and circumstances of the case at bar, a reasonable person would impute to the convening authority a personal feeling or interest in the outcome of the litigation. *United States v. Crossley*, 10 M.J. 376, 378 (C.M.A.1981); *United States v. Conn*, 6 M.J. 351, 354 (C.M.A.1979); *United States v. Gordon*, 2 C.M.R. 161, 166 (C.M.A.1952).[1]

At the same time there is also a strong and firm presumption that government officials perform their functions without bias. *Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 1669, 72 L.Ed.2d 1 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). *See United States v. Martinez*, 19 M.J. 744, 751 (A.C.M.R.1984) ("Military officers are public officers and, as such, it is presumed that they perform their official duties in a regular manner and in good faith, as well as in compliance with the law."), *pet. denied*, 21 M.J. 27 (C.M.A. 1985).[2] This presumption can be rebutted, *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973), but the burden of establishing a disqualifying interest is on the person making the contention. *Schweiker, supra*, 456 U.S. at 196, 102 S.Ct. at 1670. The evidence of an impermissible interest that would motivate bias must be realistic and more than "remote." *See Marshall v. Jerrico*, 446 U.S. 238, 250, 100 S.Ct. 1610, 1617, 64 L.Ed.2d 182 (1980).

In the case at bar, an analysis of this issue must begin with the proposition that appellant's case arrives at this court for review with a general presumption of correctness and regularity, *see United States v. Cruz*, 20 M.J. 873, 884–85 (A.C.M.R.1985) (en banc), *pet. granted*, 22 M.J. 100 (C.M.A. 1986) as well as the more specific presumption just mentioned. Before we reach the merits of appellant's disqualification claim, we must first determine whether he has

---

**5.** We fully agree with Judge Naughton that a presumption of regularity attaches to official acts, including the exercise of the power to convene courts-martial, and also with his thesis that, even if waiver did not apply, appellant would have the burden of raising the issue of disqualification. We prefer to rest our result on appellant's waiver. In our view, an effective waiver of an issue precludes any further consideration of that issue. Since that is our position, we decline to express any opinion on the question whether the evidence before the court in this case is sufficient to raise the issue of disqualification by reason of a "personal interest."

**1.** This reasonable person standard for testing a convening authority's impartiality is also used by the Article III courts to test the impartiality

of a judge. Under 28 U.S.C. § 455(a) a judge must recuse himself in any proceeding in which his impartiality "might reasonably be questioned." The goal of this statute is to foster appearance of impartiality. *Potashnick v. Port City Const. Co.*, 609 F.2d 1101 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

**2.** *See also Wilkes v. Dinsman*, 48 U.S. (7 How.) 89, 12 L.Ed. 618 (1849); 29 Am.Jur.2d *Evidence* § 171 (1967); *cf. NLRB v. Ohio New and Rebuilt Parts, Inc.*, 760 F.2d 1443 (6th Cir.1985) (mere possibility that public official will be biased in performance of quasi-judicial duties not sufficient to overcome presumption of impartiality in performance of official duties).

satisfied his appellate burden of producing sufficient evidence to raise the issue before us. If appellant is successful in raising the issue of disqualification, he then has the burden of rebutting the presumption that General Z acted properly. Other than the command relationship which existed between the convening authority and the victim's father, there is no evidence in the record that the convening authority had anything other than an official interest in appellant's case. Without more, a general allegation that it was possible that the convening authority had a personal interest is insufficient to raise an issue alleging a personal interest adverse to that of appellant.[3] Accordingly, I find that appellant has failed to meet his appellate burden of producing evidence before this court which is sufficient to raise the issue of disqualification by reason of a "personal interest".[4]

3. Assertions merely of a conclusory nature are not enough, nor are opinions or rumors. *United States v. Haldeman,* 559 F.2d 31, 131 (D.C. Cir.1976) (en banc), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

4. Even if we were to assume that appellant had raised the issue of disqualification, the evidence of record is wholly inadequate to rebut the presumption of regularity accorded General Z's actions as convening authority. *Cf. In re United States,* 666 F.2d 690 (1st Cir.1980) (United States Attorney's petition for writ of mandamus to compel recusal of United States district judge denied by Court of Appeals which held that the combination of (1) the trial judge's past and present close professional and personal relationship to a former Massachusetts governor, (2) the position of the defendant, a former state senator, as chairman of a committee which conducted a legislative investigation in 1966 of the governor and was reportedly helpful to the governor during the investigation, and (3) the judge's own reported involvement in the investigation as the governor's legal counsel did not require recusal of the judge).