IN THE CASE OF

UNITED STATES, Appellee

v.

David J. KAISER, Sergeant
U.S. Army, Appellant

No. 02-0609/AR

Crim. App. No. ARMY 9900485

United States Court of Appeals for the Armed Forces

Argued December 15, 2002

Decided March 14, 2003

ERDMANN, J., delivered the opinion of the Court, in which
GIERKE, EFFRON, and BAKER, JJ., joined. CRAWFORD, C.J., filed a
separate dissenting opinion.

Counsel

For Appellant: Captain Terri J. Erisman (argued); Colonel
Robert T. Teetsel, Lieutenant Colonel E. Allen Chandler,
Jr. and Major Imogene M. Jamison (on brief); Colonel
Adele H. Odegard.

For Appellee: Captain Janine P. Felsman (argued);
Lieutenant Colonel Margaret B. Baines, Lieutenant
Colonel Lauren B. Leeker and Major Jennifer H. McGee (on
brief); Major Paul T. Cygnarowicz.

Military Judges: Stephen V. Saynisch and Nancy A. Higgins

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION

Judge ERDMANN delivered the opinion of the Court.

Pursuant to his pleas, Appellant was convicted of two specifications of violating a lawful order and two specifications of adultery in violation of Articles 92 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 892, 934 (2002). Contrary to his pleas, a general court-martial composed of officer and enlisted members convicted Appellant of an additional specification of violating a lawful order and an additional specification of adultery. The adjudged and approved sentence provided for a bad-conduct discharge, confinement for forty-five (45) days, forfeiture of all pay and allowances, and reduction to Private E1. With the exception of certain modifications to the forfeiture not relevant to this appeal, the Army Court of Criminal Appeals affirmed the findings and sentence in a memorandum opinion.

On Appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY INFORMING THE PANEL MEMBERS THAT APPELLANT HAD PLEADED GUILTY TO SOME OFFENSES BUT NOT OTHERS

For the reasons set forth below, we conclude that the military judge erred and reverse.

## FACTS

Appellant was a twenty-four year-old married sergeant with approximately six years of service and, at all times relevant to

2

the charges and specifications in this case, was assigned to the Defense Language Institute Foreign Language Center at the Presidio of Monterey, California. In his capacity as a training noncommissioned officer, Appellant was tasked with establishing training schedules and events for students.

In June of 1996, the Commander of the Defense Language Institute issued a policy memorandum on relationships with students, prohibiting staff members involved in training or evaluation from forming nonprofessional relationships with students. Nonprofessional relationships with students were defined as including, but not being limited to, dating, drinking, gambling, borrowing or loaning money and engaging in sexual activities.

Appellant was tried in May 1999 for alleged violations of: Article 92 (four specifications) for violating the above-referenced command policy by engaging in nonprofessional relationships with Private First Class (PFC) AC, Private (PVT) SG, PFC MB and Private E-2 (PV2) CA; Article 93, UCMJ, 10 U.S.C. § 893 (2002) (three specifications) for making offensive and sexual overtures to PFC AC and PFC NW; Article 125, UCMJ, 10 U.S.C. § 925 (2002) (two specifications) for consensual sodomy

with PV2 CA;[1] and Article 134 (four specifications) for indecent assault upon PFC AC and adultery with PFC AC, PVT E-2 CA and Specialist CB.

At the commencement of his trial, Appellant entered mixed pleas with respect to the charges. He pleaded guilty to two of the four Article 92 specifications (PFC AC and PFC CB) and two of the three adultery specifications under Article 134 (PFC AC and PFC CB). He pleaded not guilty to the remaining charges and specifications.

Following her providence inquiry and entry of the guilty findings, the military judge engaged in the following exchange with counsel:

> MJ: Please be seated [The accused and his counsel did as directed.] Captain Bogie, I believe that we have the members called for at 0915?
>
> TC: That is correct, Your Honor.
>
> MJ: Okay. Let's take up some administrative matters right now. Do we have an extra copy of the flyer that we can have marked as an appellate exhibit and has a copy of that been provided to the defense?
>
> DC: No, Your Honor. The defense doesn't even have a copy of the flyer.
>
> MJ: Why don't we just go ahead and use my copy here. Captain Salerno, please approach. [The defense counsel did as directed.] Take a moment to review that. [The military judge hands the defense counsel a copy of the flyer.]

---

[1] Private E-2 CA is identified as "PVT E-2 [CA]" under Specification 4 of Charge I (Violation of Order) and Specification 3 of Charge IV (Adultery), but is also identified as "PFC [CA]" in Specifications 1 and 2 of Charge III (Sodomy).

DC:  Your Honor, the copy of the flyer that you just provided to me still contains a list of the specifications to which Sergeant Kaiser just pled guilty.  Is it your -- is it that --

MJ:  If you take a look at Page 46 of DA Pam 27-9, you'll note that the members are informed that that has occurred.  That's why those specifications remain on it.  Okay?

DC: That's fine.

MJ:  Captain Salerno, any objection?

DC:  No objection, Your Honor.

MJ:  Okay.  Let's go ahead and have a copy of that marked as an appellate exhibit.  We can do that on the break.  Just make sure that goes into the record. . . .

Following preliminary instructions and voir dire of the panel,

the military judge advised the members as follows:

MJ:  Please be seated.  Court members, at an earlier session, the accused pled guilty to several specifications.  I'd like you to take out your flyer, so that you can just place a mark next to those.  He pled guilty to Specification 2 of Charge I and Specification -- I'm sorry, Specification 1 of Charge I and Specification 3 of Charge I; if you'd just place a small mark next to those.  And then if you'd go down to Charge IV, he pled guilty to Specification 2 of that Charge and guilty to Specification 4 of that Charge.  And he pled not guilty to all other specifications and charges.  You are advised that findings by the court members will not be required on those specifications to which the accused has already been found guilty pursuant to his plea.  I inquired into the providence of his plea of guilty to those specifications and found his plea to be provident, accepted it, and entered findings of guilty on those specifications that I have just gone over with you.  Findings will be required, however, as to the charges and specifications to which the accused has pled not guilty.  Does any member have a question?

[The members indicated a negative response.]

United States v. Kaiser, 02-0609/AR

Are both sides ready to proceed?

TC:  Yes, Your Honor.

DC:  Yes, Your Honor.

The court-martial proceeded from that point, with Appellant electing to testify in his defense.  The members found Appellant guilty of an Article 92 violation and an Article 134 violation with PVT E-2 CA.  He was found not guilty of an Article 92 violation with respect to PVT SG, not guilty of the Article 93 specifications involving PFC AC and PFC NW, not guilty of the Article 125 specifications involving PVT E-2 CA and not guilty of the Article 134 indecent assault specification involving PFC AC.

## DISCUSSION

The military judge openly advised the court members at the commencement of the trial that Appellant had pleaded guilty to some of the charges, but not guilty to others.  When defense counsel raised a question about the inclusion on the flyer of the specifications to which Appellant had pleaded guilty, the military judge advised him that those specifications remained because the Military Judges' Benchbook required that the members be informed of the guilty pleas.  See Military Judges' Benchbook: Legal Services, Dep't of the Army, Pamphlet 27-9, Military Judges' Benchbook 28, 46 (1996) [hereinafter Benchbook][2].

---

[2] Republished as Military Judges' Benchbook: Legal Services, Dep't of the Army, Pamphlet 27-9, Military Judges' Benchbook 29, 47 (2001) [hereinafter

The Benchbook does not contain such a requirement. The Benchbook provides the following instruction after a plea is accepted:

> The MJ should not inform the court members of plea and findings of guilty prior to presentation of the evidence on another specification to which the accused pled not guilty, unless the accused requests it or the guilty plea was to an LIO [Lessor Included Offense] and the prosecution intends to prove the greater offense.  Unless one of these two exceptions exist, the flyer should not have any specifications/charges which reflect provident guilty pleas if other offenses are being contested.

See Benchbook at 29.

Contrary to the military judge's statement that the Benchbook directs notification of the court members of guilty pleas as a matter of course, such notification is directed only when specifically requested by the accused.  In the absence of a specific request by the accused or circumstances involving an LIO, "the flyer should not have any specifications/charges which reflect provident guilty pleas if other offenses are being contested."  Id.

The provisions of the Benchbook are consistent with and reflect the requirements of Rule for Courts-Martial 913(a) [hereinafter R.C.M.]:

> (a) Preliminary Instructions.  The military judge may give such preliminary instructions as may be appropriate.  If mixed pleas have been entered, the military judge should ordinarily defer informing the members of the offenses to

_____

Benchbook].  The referenced provisions are identical to those in effect at the time of trial.

7

>     which the accused pleaded guilty until after the findings
>     on the remaining contested offenses have been entered.

This same directive to ordinarily defer informing members of guilty pleas in mixed plea cases is also found in the discussion under R.C.M. 910(g), which relates to the entry of findings. Finally, the discussion under R.C.M. 913(a) makes it clear that "[e]xceptions to the rule requiring the military judge to defer informing the members of an accused's prior pleas of guilty include cases in which the accused has specifically requested, on the record, that the military judge instruct the members of the prior pleas of guilty" and cases involving guilty pleas to an LIO.

The current rule is based in part on this Court's decision in United States v. Rivera, 23 M.J. 89 (C.M.A. 1986), where we held that the military judge erred in advising the members at the outset of the trial that the accused had earlier pleaded guilty to certain of the charged offenses. See also United States v. Smith, 23 M.J. 118 (C.M.A. 1986)(in the usual case, no lawful purpose is served by informing members prior to findings about any charges to which an accused has pleaded guilty); United States v. Davis, 26 M.J. 445 (C.M.A. 1988) (the practice of informing members of guilty pleas provides a fertile area for assertion of error on appeal and can serve no useful purpose).

The law in this area is clear -- in a mixed plea case, in the absence of a specific request made by the accused on the record, members of a court-martial should not be informed of any prior pleas of guilty until after findings on the remaining contested offenses are made.  This rule is long-standing and embodied in the Benchbook, R.C.M. 910(g), R.C.M. 913(a) and our decisions in Smith, Rivera, and Davis.

The military judge therefore erred in the present case by providing a flyer to the panel that contained the specifications to which Appellant had pleaded guilty.  There was no specific request made by Appellant that such advance notification be given to the members.[3]

As noted in Davis, such an error does not always mandate a reversal:

> Where, however, admission of evidence does not violate the accused's constitutional rights, reversal is not required if we determine that the error was not prejudicial, i.e., if the finder of fact was not influenced by it or if it had only a slight effect on resolution of the case.  United States v. Barnes, 8 M.J. 115 (C.M.A. 1979).

26 M.J. at 449-50 (footnote omitted).  As we further acknowledged in Davis:  "Error of constitutional dimensions requires either automatic reversal or an inquiry into whether,

---

[3] The defense counsel did point out to the military judge that the flyer contained the guilty pleas, but he was cut off with a firm but clearly erroneous assertion that such a disclosure was required by the Benchbook. Given those circumstances and the nature of the military judge's error (i.e., failure to secure an affirmative request from the accused, on the record, for her actions), we conclude that the error is preserved for our review.

beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence."  26 M.J. at 449 n.4 (citing Chapman v. California, 386 U.S. 18 (1967); United States V. Moore, 1 M.J. 390 (C.M.A. 1976)).

The error here directly implicates the presumption of innocence and specifically the effect that advance notification to members of guilty pleas in a mixed plea case has on that presumption.  The presumption of innocence is a longstanding feature of both military and civilian law.  It is a critical part of our tradition of justice and deeply imbedded in our culture as well as our systems of justice.  United States v. Washington, 57 M.J. 394, 402 (C.A.A.F. 2002)(Baker, J., concurring).

In strict legal terms, the presumption of innocence flows from the fundamental right to a fair trial:  "The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment.  Drope v. Missouri, 420 U.S. 162, 172 (1975).  The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice."  Estelle v. Williams, 425 U.S. 501, 503 (1976).  As reflected in the language of Article 51(c)(1), UCMJ, 10 U.S.C. § 851(c)(1) (2002), the presumption of innocence is directly related to the requirement that guilt be established by legal and competent evidence beyond a reasonable doubt.  Put

another way, the presumption of innocence embodies the principle that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." Taylor v. Kentucky, 436 U.S. 478, 485 (1978).

Appellant was entitled to a presumption of innocence throughout his trial. He had a right to have his guilt or innocence of the contested specifications determined by the members solely on the basis of legal and competent evidence introduced at trial and not on other grounds, i.e., his pleas of guilty to other similar specifications. Id.; Article 51(c)(1).

In this case, the panel was handed a flyer indicating that Appellant had been charged with thirteen separate specifications of criminal conduct and was then told that Appellant had already pleaded guilty to some of the specifications. They were not advised at that time of the legal effect of those guilty pleas, but instead heard trial counsel intimate that they might serve as a basis for "inferring" something.[4]

---

[4] Trial counsel made reference to the guilty pleas in his opening statement, initially asking the members to "separate that from [their] mind[s]" and indicating that the government was "proving different charges." However, trial counsel went on to state: "[you] may be able to make some inferences, but the fact that [Appellant] pled guilty to those does not alone prove the remainder of the charges."

The circumstances under which the members were advised of Appellant's guilty pleas formed a part of the "filter" through which they viewed the evidence presented at trial and posed a heightened risk that the members felt invited, consciously or subconsciously, to draw an impermissible inference from Appellant's guilty pleas.  Cf. United States v. Riley, 47 M.J. 276, 280 (C.A.A.F. 1997)(discussing effect of impermissible comments at outset of trial on right to remain silent).

Finally, we note that Appellant was found not guilty of all of the "dissimilar" offenses (i.e., the maltreatment, indecent assault and consensual sodomy specifications), but guilty of the "similar" specifications (i.e., violation of a lawful order and adultery).

The Government has suggested that any error here is harmless, as the rules of evidence would have permitted introduction of evidence of the misconduct underlying the guilty pleas, independent of any notification to the members of the

actual pleas themselves.  See Rivera, 23 M.J. at 96 (discussing potential admissibility of such evidence under Military Rule of Evidence 404(b) and under cross-examination).  While the rules of evidence may well allow for that possibility, we decline to speculate as whether or in what manner such evidence might have been brought to the attention of the members.

Based on our review of the record and circumstances present in this case, we conclude that the military judge's decision to advise the members that Appellant had pleaded guilty to some offenses but not others, in the absence of any specific request to that effect made by Appellant on the record, was not harmless error.[5]

CONCLUSION

Accordingly, the decision of the Army Court of Criminal Appeals is reversed and the findings of guilty on Charge I, Specification 4 and Charge IV, Specification 3 are set aside. The sentence is set aside.  The record of trial is returned to the Judge Advocate General for remand to the Court of Criminal Appeals.  That court may dismiss the specifications and reassess the sentence or it may order a rehearing.

---

[5] We make no determination as to whether the error here is constitutional or non-constitutional in nature.  We hold simply that the error was not harmless under either standard.  See United States v. Alameda, 57 M.J. 190, 199-200 (C.A.A.F. 2002) (comparing standards).

United States v. Kaiser, No. 02-0609/AR

CRAWFORD, Chief Judge (dissenting):

Rule for Courts-Martial 913(a) [hereinafter R.C.M.] provides the following guidance regarding preliminary instructions: "The military judge may give such preliminary instructions as may be appropriate. If mixed pleas have been entered, the military judge should ordinarily defer informing the members of the offenses to which the accused pleaded guilty until after the findings on the remaining contested offenses have been entered." The nonbinding Discussion following the Rule adds:

> Exceptions to the rule requiring the military judge to defer informing the members of an accused's prior pleas of guilty include cases in which the accused has specifically requested, on the record, that the military judge instruct the members of the prior pleas of guilty and cases in which a plea of guilty was to a lesser included offense within the contested offense charged in the specification.

R.C.M. 913(a) discussion. The Majority is correct that the Benchbook reflects the content of the discussion, and that the military judge misinformed counsel regarding the guidance contained in the Benchbook's advice. See Military Judges' Benchbook: Legal Services, Dep't of the Army, Pamphlet 27-9, Military Judges' Benchbook, 29, 47 (2001)[hereinafter Benchbook]

Nevertheless, the language of R.C.M. 913(a) is clear that to "defer informing the members of the offenses to

which the accused pleaded guilty" is what the judge

"ordinarily" should do; hence, the Discussion's mention of

two situations "include[d]" among exceptions to the rule.

The case at hand is precisely one more exception.  In

short, the judge's authorization of the flyer permitted the

members to consider what was otherwise admissible evidence

under Military Rule of Evidence 803(22) and 404(b)

[hereinafter M.R.E.].

Furthermore, in failing to object to the flyer's

content when the opportunity arose at trial, Appellant

waived any post-trial objection to the flyer.  Even

assuming that the military judge erred, the error was not

"plain" to the extent that this Court should reverse the

decision below.

For these reasons, discussed at length below, I would

affirm the decision of the lower court.

### The Guilty Pleas Were Admissible Evidence

First, Appellant's guilty pleas were admissible under

M.R.E. 803(22).  M.R.E. 803 lists the exceptions to the

hearsay rule that are not contingent upon a declarant's

availability.  Included among this list is M.R.E. 803(22),

pertaining to judgments of prior convictions: "Evidence of

a final judgment, entered after a trial or upon a plea of

guilty . . . adjudging a person guilty of a crime

2

punishable by death, dishonorable discharge, or imprisonment in excess of one year, to prove any fact essential to sustain the judgment . . . " is admissible. R.C.M. 910(g) allows that "[f]indings based on a plea of guilty may be entered immediately upon acceptance of the plea at an Article 39(a) session." Pursuant to this rule, the military judge noted to Appellant that "[o]n your plea alone and without receiving any evidence, this court can find you guilty of the offenses to which you have pled guilty." After extensive questioning the judge determined Appellant's pleas to be provident. The guilty pleas listed on the flyer were therefore admissible under this rule, as evidence of a final judgment entered upon a plea of guilty.

Second, Appellant's admissions during the providency inquiry rendered the guilty pleas admissible under M.R.E. 404(b). This rule addresses the potential prejudice that could result from members' knowledge of other crimes committed, or allegedly committed, by the accused. M.R.E. 404(b) reads: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The motive behind this rule is the same motive that generates the military's efforts "to assure that [in trials by courts-martial] an accused will not be found guilty of one offense merely

3

because he is guilty of other crimes." United States v. Rivera, 23 M.J. 89, 95 (C.M.A. 1986). This is precisely why Appellant claims that he has been prejudiced by the members' consideration of his guilty pleas.

Yet, M.R.E. 404(b) provides a significant exception: Such otherwise inadmissible evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Appellant's admissions during the providency inquiry concerning the four uncontested specifications were so closely factually intertwined with all of the specifications that each admission and corresponding guilty plea was illustrative of Appellant's motive, opportunity, and intent regarding the contested specifications.

During the providency inquiry in this case the military judge meticulously narrated the facts related to each uncontested offense and then asked Appellant to confirm that the elements of each offense accurately described what Appellant had done. In replying to the judge, Appellant described having consensual sex in his barracks room with Private First Class (PFC) AC, a woman who was in training at the Presidio, allowing another woman, PFC M.B., to remain in his bed unconscious from

4

extreme intoxication, and having sex with a Specialist (SP4) CB, a Presidio student, in her barracks room after meeting her at a local bar.

The information gleaned from these admissions tracked the essential elements of all of the specifications. The plea admissions involved the same type of women (trainees), the same type of acts, and the same general sexual behavior as the contested charges alleged. The specifications concerned a total of six women who had contact with Appellant between December 1997 and July 1998, and included charges of fraternization, maltreatment, sodomy, indecent acts, and adultery. The fraternization charge under Article 92 addresses the failure to obey an order or regulation, in this case a regulation prohibiting nonprofessional relationships with trainees. See Article 92, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 892 (2002). The Article 93 maltreatment charge in pertinent part punishes sexual harassment, which includes "deliberate or repeated offensive comments or gestures of a sexual nature." Article 93, UCMJ, 10 U.S.C. § 893 (2002). The sodomy charge under Article 125 prohibits "unnatural carnal copulation." Article 125, UCMJ, 10 U.S.C. § 925 (2002). Finally, the Article 134 charge of indecent acts and adultery alleges appellant's behavior to have been

5

contrary to good order and discipline.  See Article 134,

UCMJ, 10 U.S.C. § 934 (2002).  The essential elements of

these charges, the type of behavior they punish, were

clearly the essential elements of Appellant's guilty pleas

and corresponding providency admissions.  The guilty pleas

were therefore indicative of Appellant's motive,

opportunity, intent, preparation, and/or plan regarding the

contested specifications, and as such were admissible under

M.R.E. 404(b).[1]

In sum, although the judge may have misconstrued the

Benchbook, she did so in the context of circumstances

exceptional to the "ordinary" parameters of R.C.M. 913(a),

rightly permitting the members to consider what would

otherwise have been admissible evidence under M.R.E.

803(22) and 404(b).

### Appellant Waived Objection to the Flyer

R.C.M. 905(e) states that "objections . . . must be

raised before the court-martial is adjourned for that case

and . . . failure to do so shall constitute waiver."  The

purpose of this rule is "to eliminate the expense to the

---

[1] In the same vein, this Court applied the underlying principle of Military Rule of Evidence 404(b) to its analysis of whether a military judge committed prejudicial error by informing the members prior to a contested trial of the offenses to which the accused pleaded guilty.  United States v. Smith, 23 M.J. 118, 121 (C.M.A. 1986).

6

parties and the public of rehearing an issue that could have been dealt with by a timely objection or motion at trial." United States v. Huffman, 40 M.J. 225, 229 (C.M.A. 1994)(Crawford, J., dissenting in part and concurring in the result). In the present case, defense counsel waived any objection to informing the members about the previous guilty pleas when he stated "that's fine" and "no objection" after the military judge's erroneous summary of the Benchbook. The judge gave defense counsel the opportunity to debate the legality of the flyer's content, yet counsel had nothing to say. This failure to argue, coupled with counsel's explicit assertion that he had "no objection," constitutes waiver, pure and simple. Absent plain error, the issue is therefore not suited for appeal.

Furthermore, throughout the court-martial, defense counsel actively put Appellant's guilty pleas before the members. During his opening statement, defense counsel remarked:

> [The Accused] has an absolute right not to say anything. That's not the kind of soldier [he] is. He came forward this morning and said, "I've done wrong, Your Honor. I'm guilty of these offenses. I'm going to tell you about it." And he did. But, I can't tell you about these other things for one simple reason: because they did not happen. I can't tell you about something that did not happen.

7

In addition, defense counsel repeatedly asked witnesses whether Appellant's guilty pleas had any bearing on the witnesses' opinion of Appellant. Finally, in his closing argument defense counsel characterized Appellant's guilty pleas as acts which "happened off duty hours in the privacy of his barracks room" and, in so doing, reiterated Appellant's guilty pleas. Thus, not only did defense counsel fail to dispute the flyer's inclusion of all charges when the opportunity was presented to him, but he also highlighted Appellant's guilty pleas throughout the court-martial.

In sum, by failing to formally object to the flyer when given the opportunity at trial, and in repeatedly addressing the guilty pleas on his own initiative during the court-martial, defense counsel waived any post-trial objection to the flyer.

### There was no Plain Error

"If an error is waived, further consideration of its effect is simply estopped unless it qualifies as 'plain error' . . . ." United States v. Deachin, 22 M.J. 611, 614 (A.C.M.R. 1986)(citing United States v. Tyler, 17 M.J. 381, 385-86 (C.M.A. 1984)); see also United States v. Causey, 37 M.J. 308, 311 (C.M.A. 1993). The Supreme Court in United States v. Olano, 507 U.S. 725 (1993), and Johnson v. United

8

States, 520 U.S. 461 (1997), established a four-prong test to detect plain error. To remedy an error not raised at trial an appellate court must find (1) error, (2) that is plain, (3) that affects substantial rights, and that (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. Johnson, 520 U.S. at 466-67 (quoting Olano, 507 U.S. at 732; United States v. Young, 470 U.S. 1, 15 (1985)).

The Court has defined "error" as a "deviation from a legal rule." Olano, 507 U.S. at 732-33; Johnson v. Zerbst, 304 U.S. 458, 464 (1938). An error is "plain" when it is "obvious" or "clear under current law," Olano, 507 U.S. at 734, or "'so egregious and obvious' that a trial judge and prosecutor would be 'derelict' in permitting it in a trial held today," United States v. Thomas, 274 F.3d 655, 667 (2d Cir. 2001)(citing United States v. Gore, 154 F.3d 34, 43 (2d Cir. 1998)). An error may become "plain" at the time of appellate consideration even if it was not "plain" at the time of the court-martial. Johnson, 520 U.S. at 468. An error that affects substantial rights is one that is materially prejudicial, United States v. Chapa, 57 M.J. 140, 143 (C.A.A.F. 2002); one that effects the outcome or judgment of the court-martial proceeding; Olano, 507 U.S. at 734. Appellant has the burden of demonstrating that

9

these first three prongs of the plain error test are met. United States v. Kho, 54 M.J. 63, 65 (C.A.A.F. 2000).

Assuming under the first prong of the test that the judge erred, it is nonetheless clear that under the second prong the alleged error was not "plain." The flyer's errancy was neither "obvious" nor "clear under current law," as the guilty pleas included on the flyer were admissible under M.R.E. 803(22) and 404(b). See Olano, 507 U.S. at 734. Furthermore, even if the error were plain, it certainly was not materially prejudicial, and therefore does not satisfy the third prong of the plain error test. Three facets of the case mitigate any materially prejudicial effect of the error.

First, defense counsel's recurrent explicit references to the guilty pleas -- in the opening statement, during the questioning of witnesses, and then again during closing argument -- provided the same information to the panel that was contained in the flyer and to which Appellant now objects. Given counsel's own repeated disclosure of the guilty pleas, it is extremely unlikely that the flyer itself effected the trial's outcome, and therefore clear that any error was not materially prejudicial.

Moreover, the Government did not rely on Appellant's guilty pleas to prove its case. By contrast, it plainly

10

distinguished the specifications to which Appellant pleaded

guilty from those specifications the Government had yet to

prove at trial.  During the opening statement, trial

counsel told the members:

> Now, [the Accused] has pled guilty to an
> adulterous affair and nonprofessional
> conduct with Private First Class [AC].
> Please separate that from your mind.  We are
> proving different charges.  Now, you'll
> [sic] may be able to make some inferences,
> but the fact that he pled guilty to [some
> charges] does not alone prove the remainder
> of the charges.

The Government's efforts to differentiate the guilty pleas

from the charges addressed at trial undoubtedly diminished

the flyer's influence on the findings and, in so doing,

abated any materially prejudicial effect of the error.

Third, and most strikingly, Appellant was charged with

13 specifications, and pleaded guilty to only four.

Appellant now argues that the flyer's inclusion of the

guilty pleas tainted the outcome of the trial by inclining

the members to find him guilty of other substantially

similar offenses.  However, the charge and findings chart

reproduced below tells a different story.


| CHARGE | ARTICLE | DATES | PLEA | FINDING |
|--------|---------|-------|------|---------|
| I. | 92 – Fraternization | | | |
| 1. PFC AC | | Apr–Jul 98 | G | G |

11

| | | | | |
|---|---|---|---|---|
| 2. PVT SG | Apr 98 | NG | NG |
| 3. PFC MB | Jul 98 | G | G |
| 4. PVT E-2 CA (PV2) | Apr-Jun 98 | NG | G |

II.     93 - Maltreatment

| | | | | |
|---|---|---|---|---|
| 1. PFC CA | Jul 98 | NG | NG |
| 2. PFC NW | Feb-Apr 98 | NG | NG |
| 3. PFC AC | Dec 97 | NG | NG |

III.     125 - Sodomy

| | | | | |
|---|---|---|---|---|
| 1. PV2 CA | Apr 98 | NG | NG |
| 2. PV2 CA | Jun 98 | NG | NG |

IV.     134 - Indecent Acts, Adultery

| | | | | |
|---|---|---|---|---|
| 1. PFC AC | Dec 97 | NG | NG |
| 2. PFC AC | Apr-Jul 98 | G | G |
| 3. PV2 CA | Apr, Jun 98 | NG | G |
| 4. SP4 CB | Mar-Jul 98 | G | G |

Of the 13 total specifications, Appellant was found guilty of only six.  Of the nine contested specifications, Appellant was found guilty of only two (emphasized above).  Far from being detrimental, the judge's alleged error, if significant at all, actually allowed defense counsel successfully to employ the guilty pleas throughout the proceeding to Appellant's advantage.

Finally, the fourth prong of the test requires the court to consider both the quality and quantity of evidence, as well as to determine whether "a timely objection in the trial court could have eliminated, or substantially ameliorated, any error by means well short of

12

the drastic relief -- ordering a new trial -- necessary to remedy the error on appeal." United States v. Promise, 255 F.3d 150, 194 (4th Cir. 2001)(Motz, J., concurring in part and dissenting in part and dissenting in the judgment) (citing Johnson, 520 U.S. at 466; United States v. Young, 470 U.S. 1, 15, 16 n.13 (1985); United States v. Frady, 456 U.S. 152, 163 (1982); United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238-39 (1940)).  Even assuming that any error survived the first three prongs of the plain error test, the judge's error certainly failed to jump this final hurdle.  Reviewing the quantity and quality of the evidence reveals that defense counsel could have formally objected at trial when given the opportunity, and that such an objection "could have eliminated, or substantially ameliorated, any error by means well short of the drastic relief -- ordering a new trial -- necessary to remedy the error on appeal."  See id. Pursuant to the fourth prong of the plain error analysis, any error in this case did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

In sum, the military judge's authorization for the flyer's inclusion of the uncontested charges may have exceeded the "ordinary" instruction advised in R.C.M. 913(a).  However, the judge's authorization of the flyer

13

permitted the members to consider what was otherwise admissible evidence under M.R.E. 803(22) and 404(b). Furthermore, in failing to object to the flyer's content when the opportunity arose at trial, appellant waived any post-trial objection to the flyer. Finally, even assuming that the military judge did err, the error was not "plain" to the extent that this Court should reverse the decision below.

For these reasons, I respectfully dissent.